**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | **Civil No. 20-282** |
| | ) | |
| JAVON POPE | ) | |

<u>**Opinion and Order**</u>

Defendant Javon Pope is charged in a two-count Indictment with Attempting to Remove Property and Take Other Action to Prevent Seizure in violation of 18 U.S.C. § 2232(a), and Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. § 922(g)(1).  Presently before the Court are Defendant's Motion to Suppress Physical Evidence and Statements (ECF No. 56) and Motion to Suppress Phone Seizure and Search (ECF No. 61).   The government filed its Responses to Defendant's Suppression Motions.  ECF No. 65.  For the reasons set forth below, Mr. Pope's Motions will be denied.

**I.  Background**

Mr. Pope's initial detention occurred during the execution of a federal arrest warrant for a third-party, Maurice Miller, on November 19, 2019.  On November 13, 2019, a federal grand Jury handed down an Indictment charging Mr. Miller with conspiracy to unlawfully distribute one kilogram or more of heroin, 280 grams or more of crack cocaine, 100 grams or more of acetyl fentanyl and valeyrl fentanyl, and 400 grams or more of fentanyl.  *United States v. Miller*, Criminal No. 19-190-10, W.D. Pa.  Mr. Miller was one of thirteen individuals charged in the same indictment.  The Indictment arose of law enforcement's Title III criminal investigation into a large-scale organized drug conspiracy going by the name, "Hustlas Don't Sleep."  While there were thirteen members of the conspiracy identified in the Indictment filed at Criminal No. 19-

190, other members of the organization were charged by separate indictments. The Federal Bureau of Investigation intended to arrest Mr. Miller at his residence in McKeesport, but the morning of the arrest they learned he was not there. Using data location software, law enforcement discovered that Mr. Miller was at 1727 Wesley Street, Pittsburgh, Pennsylvania.

Thereafter, the Pittsburgh Bureau of Police SWAT Operators arrived at 1727 Wesley Street, announced their presence, and ordered the occupants of the residence to come outside. In response, two occupants exited the residence: Maurice Miller and Angel Smith. Based upon the outstanding federal arrest warrant for Mr. Miller, he was taken into custody. Upon arrest, Mr. Miller informed the officers that there was a firearm in the residence. Consequently, SWAT officers conducted a protective sweep of the residence and saw, in different areas of the house, several firearms, all in plain view, including a handgun observed on a nightstand in a bedroom.

Because the officers observed firearms in the residence during the protective sweep, and because Mr. Miller was not permitted to possess a firearm due to his prior qualifying convictions, the government applied for a search warrant for 1727 Wesley Street. The Affidavit in support of the application for the search warrant also provided additional information to establish probable cause to justify a search of the residence. The Affidavit described in detail the significant investigation of Mr. Miller, and at least twelve other persons, for illegal controlled substances offenses and related offenses. An intercepted communication during the investigation showed a connection between Mr. Miller and the 1727 Wesley Street residence.[1] Finally, a canine officer's certified canine alerted to the passenger side of a vehicle parked in the driveway of 1727 Wesley Street, indicating the possible presence of illegal controlled substances.

---

[1] Specifically, law enforcement had intercepted communications between Robert Howell, Jr., a leader of the conspiracy, and Mr. Miller, in which the two discuss Mr. Howell obtaining rides to 1727 Wesley Street. Aff. Supp. Search Warrant for 1727 Wesley Street, at ¶ 12.

Law enforcement was directed to secure the residence while waiting for approval of the search warrant.  Included among law enforcement were FBI agents, who wore clearly marked clothing identify them as FBI.  While waiting for the warrant to be approved, some of the officers escorted Angel Smith, at her request, to a bedroom in the house so that she could obtain her work clothes.  While in the bedroom, officers noticed the firearm on the nightstand, that was first observed during the initial protective sweep.  In securing the residence, the officers locked all the entry doors.

Mr. Pope and other individuals were outside the residence.  While waiting for a search warrant to be approved, law enforcement agents would periodically walk around the side of the house.  On one such occasion, an agent heard the side door lock being operated, prompting the agents to reenter the home, whereupon they found Mr. Pope on the second floor.  The agents also discovered that the firearm that had previously been observed on the bedroom nightstand, was now missing.

Mr. Pope was detained, and the agents seized a cell phone found on his person.  Mr. Pope was read his *Miranda* rights, after which he signed a waiver of his rights, and agreed to talk to law enforcement.  He told the agents that he lived at 1727 Wesley Street with his girlfriend, Angel Smith.  He said he had a key to the residence, which he showed to the agents.  He further stated that Ms. Smith had called him that morning to tell him to come and retrieve his belongings, which is why he entered the house.  He denied moving any firearms in the residence.

When Angel Smith was interviewed by law enforcement, she said she had told Mr. Pope that law enforcement was at the house waiting for a search warrant.  She further told him to get his belongings because she was kicking him out, but she did not tell him to enter the house while law enforcement was present and waiting for the search warrant to be approved.

When the agents executed the approved search warrant, they discovered that the firearm from the bedroom nightstand was now located in the drawer of the nightstand.  Agents eventually learned that said firearm had been reported stolen.  Law enforcement also discovered that the mattress in the bedroom had been moved.  A firearm that had been observed under the mattress during the protective sweep was no longer there, but it was found in a clothes hamper.  In addition, an AR-15 firearm was found in the closet dissembled in two pieces.

Law enforcement also searched Mr. Pope's cell phone, pursuant to a search warrant, and found that Mr. Pope had searched the internet for "how long it took to get a search warrant."  Law enforcement also found photos of Mr. Pope with firearms on his cell phone.  On September 24, 2020, a grand jury returned a two-count Indictment against Mr. Pope and on that same date the government's motion for an arrest warrant was granted.  Mr. Pope, however, was not able to be found and he was deemed a fugitive.  Twenty-three months later, on October 14, 2022. Mr. Pope was arrested.

## II.     Motion to Suppress Physical Evidence and Statements

Mr. Pope argues that law enforcement's protective sweep of 1727 Wesley Street, performed without consent or the presence of exigent circumstances, was unconstitutional under the Fourth Amendment.  He argues that law enforcement was not justified in conducting a protective sweep of the house because Mr. Miller, a non-resident, was arrested outside of 1727 Wesley Street.  Because law enforcement unlawfully entered the residence to conduct a protective sweep, and only after said sweep did they procure a search warrant, Mr. Pope argues that all evidence obtained from the residence on November 19, 2021 must be suppressed as fruit of the poisonous tree.

**A. Standing**

Mr. Pope argues that he properly has standing to challenge the search of 1727 Wesley Street.  On the day of his arrest, he told law enforcement that he was a resident of the house, on and off, due to his relationship with Angel Smith.  Mr. Pope said he had a key to the residence, which he showed to the officers.  Ms. Smith separately corroborated that Mr. Pope was a resident of 1727 Wesley Street, but she recently told Mr. Pope to get his belongings out of the residence. At the time of his arrest, Mr. Pope still possessed a key to the residence, which he apparently used to enter the side door while law enforcement was outside the residence.  Regardless of the exact date and time that Ms. Smith told Mr. Pope to get his belongings out of the house, at the moment that he entered the residence to ostensibly retrieve his belongings on November 19, 2021, the Court concludes that Mr. Pope had standing. Mr. Pope manifested a subjective expectation of privacy based upon his living in the residence off and on, storing his belongings in the residence, possessing a key to the residence, and maintaining a relationship with the resident who gave him a key.  *California v. Ciralo*, 476 U.S. 207, 211 (1986).  The Court also concludes that Mr. Pope's subjective expectation of privacy is one that society is willing to objectively recognize as a reasonable expectation.  *Id.*  Therefore, he possessed sufficient standing as a resident of the home  to challenge the search of the residence.[2]

**B. Authorization to Conduct a Protective Sweep and Execute a Search Warrant**

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizure, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or

---

[2] The government set forth the legal analysis to apply when determining if a person has standing to challenge a search warrant.  Govt. Resp. 6-7.  The government did not reach a conclusion, instead suggesting that a hearing was necessary to resolve the issue.  *Id*. at 7.  When contacted by the Court to set a hearing date, both the government and defense agreed that a hearing was not necessary, and the Court concurred.

affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV.  The Fourth Amendment protects the public from unreasonable searches and seizures.  A warrantless search of a residence is presumed unreasonable unless an exception applies to the circumstances of the search.  *Horton v. California*, 496 U.S. 128, 133 (1990).  One such exception to the warrant requirement is "a protective sweep of a home based upon reasonable suspicion that an individual posing a danger to law enforcement may be in the area searched."  *United States v. Folks*, 452 F. Supp. 3d 238, 250 (W.D. Pa. 2020) (citing *United States v. White*, 748 F.3d 507, 511 (3d Cir. 2014); *Maryland v. Buie*, 494 U.S. 325, 344 (1990)).  A warrantless, protective sweep of a residence is permitted where the sweep is "based on reasonable and articulable suspicion that the areas being searched may 'harbor [ ] an individual' who poses a danger to those present at the scene of the arrest."  *White*, 748 F.3d at 511 (quoting *Buie*, 494 U.S. at 334).  The Third Circuit Court explained that a warrantless protective sweep of a residence is permissible because "'[i]t would be imprudent to prohibit officers who are effecting an arrest or waiting until a warrant may be obtained from ensuring their safety and minimizing the risk of gunfire or other attack coming from inside the home if they have reason to believe that dangerous individuals are inside.'"  *Folks*, F.Supp.3d at 252 (quoting *White*, 748 F.3d at 511).

It is the government's burden to establish, by a preponderance of the evidence, that a warrantless protective search is within one of the recognized exceptions to the warrant requirement.  *See United States v. Herrold*, 962 F.2d 1131, 1137 (3d Cir. 1992).  "Any evidence obtained pursuant to a warrantless search that does not meet a recognized exception to the warrant requirement must be suppressed as 'fruit of the poisonous tree.'"  *Folks*, 452 F.Supp.3d

at 250 (citing *United States v. Brown*, 448 F.3d 239, 244 (3d Cir. 2006) (citing *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963)).

Mr. Pope argues that the government is unable to demonstrate a justification for conducting the warrantless search of 1727 Wesley Street after Mr. Miller was arrested outside of the residence. The Court finds that law enforcement's protective sweep of the residence after arresting Mr. Miller outside the residence clearly falls within the exception announced in *Buie*. Federal agents planned to execute the arrest warrant for Mr. Miller at his known residence in McKeesport. They discovered that Mr. Miller was not present at his home, and, through location tracking data of Mr. Miller's cell phone, discovered that he was at 1727 Wesley Street. This address was not unknown to the investigating agents as they learned, through Title III wiretaps, that Mr. Miller had an association with 1727 Wesley Street.

Furthermore, the large-scale Title III investigation into the Hustlas Don't Sleep drug trafficking organization, revealed that the conspiracy consisted of numerous individuals (thirteen alone in the Indictment brought against Mr. Miller) engaged in a sophisticated and rigorous conspiracy to unlawfully possess and distribute controlled substances. As is typical with illegal drug distribution, the investigation also revealed the presence of firearms among members of the conspiracy. A trained canine also alerted to the presence of rugs inside a vehicle parked outside the residence, suggesting that illegal drugs may also be inside the residence. Finally, when Mr. Miller was arrested, he voluntarily told officers that there was a firearm inside 1727 Wesley Street.

Based on the above information, the warrantless protective sweep of the residence was proper. Mr. Miller was known to be an active member of a large drug conspiracy in which members possessed firearms. He was also a known convicted felon. There was a known

association between Mr. Miller and 1727 Wesley Street and there was a known firearm within

the residence.  Given the present and immediate likelihood of danger, the officers were not

required to "wait[] until a warrant may be obtained" to ensure their safety and minimize the risk

of an attack.  *White*, 748 F.3d at 511.  Law enforcement's protective sweep of the residence was

"narrowly confined to a cursory visual inspection of those places in which a person may be

hiding."  *Buie*, 494 U.S. at 327.  While conducting the protective sweep, the officers observed, in

plain view, the firearm on the nightstand, as well as other firearms.  The Court concludes that

law enforcement possessed a reasonable and articulable suspicion that a dangerous individual

may be inside the home justifying the protective sweep of the residence.  The author of the

Affidavit in support of applying for a search warrant was therefore permitted to include the fact

that law enforcement observed firearms in the residence.

**III.    Motion to Suppress Phone Seizure and Search**

Mr. Pope also argues that the search of his cell phone, performed pursuant to a warrant,

was conducted in violation of the Fourth Amendment.[3]  The Fourth Amendment of the United

States Constitution protects the public from unreasonable searches and seizures.  When making a

probable cause determination, a magistrate must ascertain "whether there is a 'fair probability

that contraband or evidence of a crime will be found in a particular place.'"  *United States v.

Conley*, 4 F.3d 1200, 1205 (3d Cir.1993) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)

(internal citations omitted)).  The test, as set forth in *Gates*, requires that the issuing magistrate

---

[3] Mr. Pope ostensibly argues that the *seizure* of his cell phone ,when he was first detained, was also unlawful.
However, he does not set forth argument in support of this conclusion.  The only additional information he
provides is a comment that, the Affidavit does "not state with specificity the order of events and how [law
enforcement] came into possession of Pope's phone."  Def. Mot. Supp. Phone Seizure and Search 6.  Mr. Pope also
conclusorily states that the "Affidavit contains inaccurate information[,] which would lead a magistrate to believe
that the LG smart phone was lawfully seized during the execution" of the search warrant for 1727 Wesley Street,
"when, in fact, it was seized while agents were waiting for approval of the search warrant."  *Id.*  There is no legal
argument presented in support of the conclusion that the seizure of Mr. Pope's cell phone was unlawful.
Accordingly, the Court concludes that the seizure of the cell phone was lawful.

"make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information" there is probable cause to support a warrant. *Id.* at 238. A magistrate's "determination of probable cause should be paid great deference by reviewing courts." *Id.* at 236.

"The duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Gates*, 462 U.S. at 236 (quoting *Jones v. United States,* 362 U.S. 257, 271 (1960)). "The supporting affidavit must be read in its entirety and in a commonsense and nontechnical manner." *Conley*, 4 F.3d at 1208. A warrant must be upheld "as long as there is a substantial basis for a fair probability that evidence will be found." *Id.* at 1205. Reviewing courts must not "simply rubber stamp a magistrate's conclusions." *United States v. Tehfe*, 722 F.2d 1114, 1117 (3d Cir.1983).

Mr. Pope argues that the Affidavit of Probable Cause in support of the search warrant for the cell phone fails to provide probable cause that Mr. Pope was engaged in drug trafficking crimes. He contends that the Affidavit lacks probable cause because it is based on speculative and conjectural assertions. He argues that the Affidavit lacks specific factual averments to support a belief that Mr. Pope had an illegal drug connection to Mr. Miller, that evidence of drug offenses would be found on his cell phone, and therefore the Affidavit fails to establish a nexus between Mr. Pope's cell phone and drug trafficking crimes. Def. Mot. Supp. Phone Seizure and Search 5-6 (citing *United States v. Dixon*, 787 F.3d 55, 59 (1st Cir. 2015)).

The Affidavit provided all necessary facts to establish probable cause to support a warrant to search Mr. Pope's cell phone. In Paragraph 6, the author of the Affidavit, FBI Special Agent Eric Goucher, states that the cell phone is associated with Pope, "who, as explained

below, is a close associate of a target subject [Mr. Miller] in a federal drug trafficking Title III investigation." Aff. Jan. 28, 2020, at ¶ 6, ECF No. 61-1. Mr. Pope argues that this statement is made without any foundation, however, as stated in this introductory paragraph, the explanation of the association occurs later in the Affidavit, under the heading "Probable Cause." In that section, Agent Goucher explains that an arrest warrant for Mr. Miller was executed on November 19, 2019, at a residence where Mr. Miller had been located previously through the use of cell phone location data. Aff. ¶ 12. The Affidavit further states that Title III intercepts confirmed that the residence was a narcotics distribution location for Mr. Miller over the past several weeks. *Id.* The Affidavit also explains that Mr. Miller reported that there was a firearm in the residence, that a protective sweep of the residence was performed, and that officers observed firearms inside the residence. *Id.* at ¶¶ 12-13. Agent Goucher also explains that, after the residence was secured, Mr. Pope was found inside the home and that several firearms previously observed by officers had been moved. *Id.* at ¶ 13. He told officers he lived in the residence on and off and that he had a key. *Id.* He said he was inside the residence to get his possessions. *Id.*

The above information alone provides sufficient probable cause to believe that evidence of drug trafficking would be found on Mr. Pope's cell phone. The Title III investigation of Mr. Miller and his associates revealed a large-scale drug conspiracy involving numerous individuals. Mr. Miller's arrest at a known location for drug distribution, where he admitted that a firearm was located, would give a prudent magistrate judge reason to believe that additional evidence of drug offenses would be found inside the residence. The Affidavit further avers that, despite the clear presence of FBI agents, Mr. Pope entered a secured residence through a side door using a key he possessed. Considering that firearms had been moved inside the residence after Pope had entered, Agent Goucher asserts the reasonable and logical conclusion that Pope entered the

residence with the purpose to disrupt, hinder, or otherwise prevent the agents from seizing

firearms in the home.  In fact, that is why he was initially detained.  Such information provides

probable cause to search Mr. Pope's cell phone.

However, the Magistrate Judge was provided with even more information to support a

finding that probable cause existed.  Agent Goucher explained that the search of the residence

revealed the presence of five firearms (which Pope had attempted to conceal), 150 rounds of

ammunition, multiple scales, over 400 grams of suspected fentanyl, and over $7,300 in United

States currency.  A magistrate judge reviewing the Affidavit would therefore know:

- that suspected drug trafficking on a large scale was being conducted out of the residence,
- that firearms, drugs, drug paraphernalia, and a large amount of United States currency were found inside the house,
- Mr. Miller was a target of a Title III investigation into a large-scale drug conspiracy consisting of numerous individuals,
- a canine trained in detecting narcotics had alerted to a vehicle outside the residence
- Mr. Pope entered a locked door while the residence was secured by well-identified FBI Agents,
- Mr. Pope attempted to hide firearms, previously observed during a protective sweep.

From these averments, a magistrate judge could reasonably conclude that Mr. Pope is a close

associate of Mr. Miller.  Thus, a magistrate judge could also reasonably conclude that there is a

"fair probability that contraband or evidence of a crime will be found" on Mr. Pope's cell phone.

*Conley*, 4 F.3d at 1205.  Therefore, the Court concludes that the Magistrate Judge, who reviewed

the Affidavit, had a substantial basis to conclude that probable cause existed authorizing the

search of Mr. Pope's cell phone.  *Gates*, 462 U.S. at 236.  The search pursuant to the warrant was

therefore proper.  Accordingly, Mr. Pope's Motion to Suppress Phone Seizure and Search will be

denied.

**V.     Conclusion**

For the reasons explained above, Defendant's Motion to Suppress Physical Evidence and Statements (ECF No. 56) is DENIED, and Defendant's Motion to Suppress Phone Seizure and Search (ECF No. 61) is DENIED.


Dated: <u>September 9, 2024</u>

Marilyn J. Horan
United States District Court Judge